United States Court of Appeals,

Fifth Circuit.

No. 93-3341.

Margaret Ann WHEAT, et al., Plaintiffs-Appellants,

v.

PFIZER, INC., et al., Defendants-Appellees.

Sept. 14, 1994.

Appeal from the United States District Court for the Middle District of Louisiana.

Before WISDOM, DAVIS, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge.

Plaintiffs, the survivors of Margaret Gordon, brought this product liability case against Pfizer, Inc. ("Pfizer"), and McNeil Pharmaceutical, a division of McNeil Lab, Inc., ("McNeil"). The district court granted summary judgment for McNeil. The case against Pfizer proceeded to trial and during jury deliberation a mistrial was declared. Following the mistrial, the district court granted Pfizer's motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b). Plaintiffs appeal. Pfizer and McNeil moved to dismiss the appeal as untimely. We deny the motion to dismiss and affirm the grant of summary judgment and judgment as a matter of law.

FACTS

In July 1989, Margaret Gordon's treating physician prescribed Feldene, a drug manufactured by Pfizer, for her chronic neck pain. The prescribed dosage was one capsule per day. She filled this prescription four times over the next four months, for a total of one-hundred capsules. A series of routine tests at that time indicated that her liver was generally healthy.

Mrs. Gordon returned to her physician about five weeks later complaining that the Feldene had not alleviated her discomfort. Her physician then prescribed Parafon Forte DSC, a drug manufactured by McNeil, and told her to continue using the Feldene as well. On this visit, the doctor may have given Mrs. Gordon some samples of Parafon Forte DSC. At trial, he did not recall having done so, but one of her children testified that he had seen a box at her home similar to the one in

which Parafon Forte DSC is packaged. It is undisputed that Mrs. Gordon did not fill the Parafon Forte DSC prescription until six days after she received it. At that time, the pharmacist substituted the drug Chlorzoxazone, a generic form of Parafon Forte DSC manufactured by the Lemmon Company. Thus, Mrs. Gordon's only possible exposure to McNeil's product Parafon Forte DSC would have been from samples, which the Defendants deny she was ever given.

During the week of Thanksgiving 1989, Mrs. Gordon became violently ill. On November 28, 1989 she again saw her physician who found her jaundiced and ordered her to stop taking the Feldene. He apparently did not instruct her to stop taking the Chlorzoxazone. Tests performed at that time showed serious liver dysfunction, and her condition was diagnosed as hepatitis. Mrs. Gordon tested negative for hepatitis A and hepatitis B. At the time of Mrs. Gordon's illness there was no available test for hepatitis C, so it was never determined whether she suffered from that type. Hepatitis A, B, and C are collectively referred to as "viral hepatitis" and are not caused by medication.

Mrs. Gordon was hospitalized on December 1, lapsed into a coma on December 12, and died the following evening. Plaintiffs, claiming that the Feldene and Parafon Forte DSC caused Mrs. Gordon's hepatitis, sued Pfizer and McNeil.[1] Plaintiffs later moved to join the physicians who had treated Mrs. Gordon, and to remand the case to the state court. The motion was denied.

The primary issue in this case is whether the Plaintiffs have made a sufficient showing that Mrs. Gordon's hepatitis was caused by Feldene or by Parafon Forte DSC, rather than by viral hepatitis so as to survive Pfizer's motion for judgment as a matter of law and McNeil's pretrial motion for summary judgment.

## DISCUSSION

I. Timeliness of the Appeal

Pfizer and McNeil contend that Plaintiffs' notice of appeal was untimely filed and ask this Court to dismiss the appeal for lack of jurisdiction. They argue that because the district court's denial of Plaintiffs' post-trial motion was filed on April 1, Plaintiffs' notice of appeal filed on May 5, more

---

[1]The Lemmon Company, manufacturer of Chlorzoxazone, was a party in the district court but is not a party to this appeal.

than thirty days after the denial of the post-trial motion, was untimely. This argument ignores the rule that, for purposes of determining whether a notice of appeal was timely, the relevant date is the date the post-trial motion was entered on the docket, not the date it was filed. *See Vincent v. Consolidated Operating Co.,* 17 F.3d 782, 785 and n. 8 (5th Cir.1994) (citing *Burrell v. Newsome,* 883 F.2d 416, 418 (5th Cir.1989)). The district court's denial was entered on the docket sheet on May 13. Thus the Plaintiffs' May 5 notice of appeal was timely and is treated as if it had been filed immediately after the entry of the judgment. *See* Fed.R.App.P. 4(a)(2).

II. Suit Against Pfizer

A. Pfizer's Motion for Judgment as a Matter of Law

We review a motion for judgment as a matter of law de novo, applying the same legal standard as did the trial court. *Omnitech Int'l, Inc. v. Clorox Co.,* 11 F.3d 1316, 1322-23 (5th Cir.1994). Judgment as a matter of law is appropriate if the evidence at trial points so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion. Fed.R.Civ.P. 50(a); *Omnitech,* 11 F.3d at 1323.

Louisiana imposes liability on the manufacturer of an unreasonably dangerous product when the characteristic of that product, which renders it unreasonably dangerous, proximately causes the complained of injuries. La.Rev.Stat.Ann. § 9:2800.54(A). A plaintiff must prove not only causation in fact, but also that the product defect was "the most probable cause" of the injury. *Brown v. Parker-Hannifin Corp.,* 919 F.2d 308, 311 and n. 9, 312 (5th Cir.1990). Plaintiffs' evidence of causation does not meet this standard.

Plaintiffs have shown that Feldene can cause hepatitis, although the exact incidence is disputed. Plaintiffs have also shown that Mrs. Gordon took Feldene over a period of several months prior to her death. What Plaintiffs' evidence fails to do, however, is to show that Feldene was "the most probable cause" of her death. There is, for example, evidence that Mrs. Gordon reported to one of her physicians that she had been in contact with a family member infected with hepatitis. There is no evidence excluding the possibility that this contact caused her illness. Similarly, Plaintiffs have offered no evidence excluding the possibility that Mrs. Gordon contracted hepatitis C, a form of viral

hepatitis unrelated to medication. Some of the treating physicians testified that they believed that this is the illness that she had, a view shared by Defendant's expert witness. Finally, assuming that decedent's death was caused by drug induced hepatitis, there is in the record no scientific evidence which would support any expert opinion that Feldene, rather than Chlorzoxazone was the cause of Mrs. Gordon's hepatitis. In short, Plaintiffs did not offer sufficient evidence from which a reasonable jury could have concluded that Feldene was the most probable cause of Mrs. Gordon's hepatitis.

Likewise, Plaintiffs' evidence is insufficient to establish that the warning in the Feldene package insert was inadequate. To prevail on such a claim, Plaintiffs must demonstrate that "a proper warning would have changed the decision of the treating physician, *i.e.,* that but for the inadequate warning, the treating physician would not have used or prescribed the product." *Willett v. Baxter International, Inc.,* 929 F.2d 1094, 1099 (5th Cir.1991). There is absolutely no evidence in this record to support that proposition.

B. Limiting Expert Testimony

Plaintiffs complain that the district court improperly restricted the testimony of their expert witness. We need not determine whether the restriction was error because, if it was, it was harmless. Plaintiffs' expert, Dr. George, did not purport to testify to the facts on which the Plaintiffs' case was found lacking: Dr. George did not offer to testify that Feldene was the most probable cause of Mrs. Gordon's hepatitis, nor did he offer to testify that the treating physician would not have prescribed Feldene had it included the warning label, which Plaintiffs claim it should have included. Accordingly, even if Dr. George had been permitted to testify to the extent sought by Plaintiffs, the outcome of the case would not have been affected.

We note in passing that Dr. George's testimony would not have survived the test of *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* --- U.S. ----, ----, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469 (1993). Under *Daubert,* before the district court permits expert scientific testimony, it must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Key to this test is whether the expert's hypothesis can be and has been tested. *Id.* At the hearing held to evaluate his proffered testimony,

Dr. George hypothesized that the combination of Feldene and Chlorzoxazone may have caused Mrs. Gordon's hepatitis. He admitted, however, that no study of the combined effects of the drugs had ever been done, and thus his hypothesis lacked an empirical foundation. Neither had it been subjected to peer review and publication, which *Daubert* also identifies as key. *Id.* at ----, 113 S.Ct. at 2797.

III. Suit Against McNeil

We review de novo the district court's grant of summary judgment in favor of McNeil using the familiar standard of Federal Rule of Civil Procedure 56(c). Under this standard, summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

Plaintiffs' case against McNeil was properly dismissed on summary judgment because there was no genuine issue as to whether Mrs. Gordon was ever exposed to McNeil's product. Mrs. Gordon's physician prescribed the McNeil drug, but that prescription was filled with a different medication from another manufacturer. One witness stated that she had seen a green pill in Mrs. Gordon's possession but was unable to identify it as Parafon Forte DSC. Another stated that he had noticed a package at Mrs. Gordon's home resembling the packaging of Parafon Forte DSC but was unable to definitely identify it or produce the package. This evidence was insufficient to create a material issue that Mrs. Gordon actually used this drug.

IV. Joinder and Remand

Finally, Plaintiffs contend that the district court abused its discretion in denying their motion to join Mrs. Gordon's treating physicians, non-diverse defendants, and to have the case remanded to state court. The district court listed a number of reasons for its denial: the claims made against the physicians were essentially malpractice claims which are different from the claims made against the drug manufacturers; the physicians were not necessary or indispensable parties under Federal Rule of Civil Procedure 19; and granting the motion would prejudice the pharmaceutical company defendants. After considering these reasons, we conclude that the court did not abuse its discretion.

CONCLUSION

Motion DENIED. Grant of summary judgment and judgment as a matter of law AFFIRMED.