IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-30621
Summary Calendar

_____

JERRY TOUSSAINT; MYRA RENEE
TOUSSAINT,

                                    Plaintiffs-Appellants,

                    versus

CHARLES HAMLIN; RENTERS
CHOICE INCORPORATED,

                                    Defendants-Appellees.

_____

Appeal from the United States District Court for the
Western District of Louisiana
USDC No. 96-CV-357

_____

April 8, 1998

Before JOLLY, BENAVIDES, and PARKER, Circuit Judges.

PER CURIAM:[*]

     Myra Toussaint was hired by Magic-Rent-To-Own as a manager-in-training.  Magic-Rent-To-Own was subsequently purchased by defendant Renter's Choice ("Renters"), at which point Toussaint, in order to maintain her employment at Renters, was required to change to an account manager position.  Toussaint alleges that, during her employment at Renters and while under the supervision of defendant Charles Hamlin, she was subjected to many acts of discrimination on the basis of her race and subjected to a hostile work environment because of the defendants' disparate treatment of African-American

_____

     [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

customers.  Toussaint also alleges that, despite her good work record, the defendants terminated her employment because she is African-American.  Based on the above allegations, Toussaint filed the instant suit against the defendants, pursuant to 42 U.S.C. § 1981 ("§ 1981") and the Louisiana Human Rights Commission Act, La. R.S. 51:2242.  Id. at 1-5.  Additionally, Jerry Toussaint ("Jerry"), the husband of Myra Toussaint, asserted a claim pursuant to Louisiana Civil Code Article 2315 against the defendants for "loss of services, emotional distress from concern for his wife, loss of society and consortium."

The district court granted the defendants' motion for summary judgment on all counts of the complaint and dismissed the complaint with prejudice.  Toussaint filed a timely notice of appeal.

On appeal, Toussaint argues that the district court erred by granting the defendants' summary judgment motion regarding her discriminatory discharge claim, because there were genuine issues of material fact.  Although the defendants have fully briefed their arguments regarding Toussaint's other claims, Toussaint failed to argue her other claims, as well as Jerry's claim, in her appeal brief.  Toussaint's other claims and Jerry's claim are therefore deemed abandoned.  See Yohey v. Collins, 985 F.2d 222, 224-25 (5th Cir. 1993) (holding that claims not argued in the body of the brief are abandoned on appeal).

We review a grant of summary judgment de novo.  Green v. Touro Infirmary, 992 F.2d 537, 538 (5th Cir. 1993).  Summary judgment is

appropriate when, considering all of the admissible evidence and drawing all inferences in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc).  There is no genuine issue of material fact, if, taking the record as a whole, a rational trier of fact could not find for the nonmoving party.  Newell v. Oxford Management, Inc., 912 F.2d 793, 795 (5th Cir. 1990).

Claims of racial discrimination brought under § 1981 are subject to the same evidentiary framework as those brought under Title VII.  See Harrington v. Harris, 108 F.3d 598, 605 (5th Cir. 1997).

> [T]he proper allocation of burdens of production in employment discrimination cases [is]:  First, the plaintiff must establish a prima facie case of discrimination;  second, if [the plaintiff] is so successful, the defendant must articulate some legitimate, nondiscriminatory reason for the challenged employment action;  and third, if the defendant is so successful, the inference of discrimination raised by the prima facie case disappears, and the plaintiff then must prove, by a preponderance of the evidence, both that the defendant's articulated reason is false and that the defendant intentionally discriminated.

Walton v. Bisco Ind., 119 F.3d 368, 370 (5th Cir. 1997) (citations omitted).  To establish a prima facie case of discriminatory discharge, the plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position that she formerly held; (3) she was discharged from that position; and (4)

-3-

after being discharged, her position was filled by a person who is not a member of the protected class. See Meinecke v. H & R Block, 66 F.3d 77, 83 (5th Cir. 1995).

The district court held that Toussaint had established a prima facie case of discriminatory discharge, but that the defendants had offered a legitimate, nondiscriminatory reason for her discharge, which was that Toussaint had failed to meet the stated credit guidelines regarding her accounts. This proffered reason was stated on Toussaint's termination form, and in her deposition Toussaint admitted that she had failed to meet the credit guidelines prior to, and at the time of, her termination.

At this point, as noted by the district court, the burden shifted to Toussaint to prove that the defendants' proffered reason for discharge was a pretext for racial discrimination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993). In opposition to the defendants' motion for summary judgment, Toussaint argued that the defendants' proffered reason was clearly pretextual because: (1) she was never told that she could be discharged for failing to meet the credit guidelines; (2) her white coworkers were not fired, although they also failed to meet the credit guidelines; and, (3) at the beginning of her employment, defendant Hamlin told her that he had never seen any black managers that were good. However, in her deposition, Toussaint admitted that all of the account managers had been warned that they could be terminated if they failed to meet the credit guidelines. She also

-4-

admitted that one of the two white coworkers who had been employed at the time she had been hired had subsequently been fired, while the other had subsequently quit. Although the routine use of derogatory racial comments may constitute direct evidence of a discriminatory motive behind a termination decision, see Brown v. East Miss. Elec. Power Assoc., 989 F.2d 858, 861 (5th Cir. 1993), the single alleged comment by defendant Hamlin clearly fails to qualify as routine.

A plaintiff's subjective belief that she was discharged due to racial discrimination, by itself, is insufficient to prevent summary judgment for a defendant who has given a legitimate, nondiscriminatory reason for discharge. See Douglass v. United Serv. Auto. Assoc., 79 F.3d 1415, 1430 (5th Cir. 1996)(en banc). As Toussaint failed to satisfy her burden by showing that the defendants' proffered reason for her discharge was a pretext for racial discrimination, the district court properly granted summary judgment for the defendants.

A F F I R M E D.